**STATE OF MAINE et al., Plaintiffs-Appellees,**

v.

**Robert W. FRI, etc., et al., Defendants-Appellants.**

**No. 73–1254.**

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1973.

Decided Nov. 2, 1973.

William D. Appler, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Peter Mills, U. S. Atty., and Walter H. Fleischer, Atty., Dept. of Justice, were on brief, for defendants-appellants.

Lee M. Schepps, Asst. Atty. Gen., for plaintiffs-appellees.

Before COFFIN, Chief Judge, MOORE, Senior Circuit Judge,* and CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

For the second time, the Administrator of the Environmental Protection Agency (EPA) appeals from the district court's interim order of June 29, 1973, requiring him to allot $29,025,000 to Maine in fiscal year 1973 for purposes of the Water Pollution Control Act Amendments of 1972, 33 U.S.C. (Supp. II, 1972) § 1281 et seq. (the "Act"). The order, issued several days before the end of the federal fiscal year, also provides that none of the funds so allotted will be available for obligation until further order of court. We dismissed an earlier appeal for lack of appellate jurisdiction. 483 F.2d 439 (1st Cir. 1973). Several months having passed without further hearing or action in or by the district court, we are now persuaded that the order was or has become an appealable preliminary injunction. *Id.* p. 440.

Maine brought the present suit after the then acting Administrator of the EPA, at the express direction of the President of the United States, had allotted among

* Of the Second Circuit sitting by designation.

the states, for the purposes of the Act, two billion dollars for fiscal 1973 and three billion dollars for fiscal 1974. Section 207 of the Act provides that "[t]here is authorized to be appropriated to carry out this subchapter . . . for the fiscal year ending June 30, 1973, not to exceed $5,000,000,000, [and] for the fiscal year ending June 30, 1974, not to exceed $6,000,000,000, . . ." Maine contends that the President and the Administrator lack authority to reduce the 1973 and 1974 allotments below the sums authorized to be appropriated, especially since § 205 provides: "Sums authorized to be appropriated pursuant to § 207 for each fiscal year . . . *shall* be allotted by the administrator . . . ." [Emphasis supplied.] The merits of Maine's claim have yet to be heard. The district court has informed the parties that it will expedite their determination.

The only question before us is the appropriateness of the preliminary order directing, in effect, a "paper allotment" of the disputed funds. Maine sought the interim relief because of its fear that if the Administrator was not ordered to make a formal allotment—essentially a bookkeeping entry—before the end of fiscal 1973 on June 30, 1973, the funds might irretrievably be lost. Thereafter the court held a hearing on July 6, 1973, on the Administrator's motion to vacate the temporary order. It denied the motion. We are satisfied that the order was issued in substantial compliance with required procedures, and that the district court did not abuse its discretion in issuing it.

■ The Administrator attacks the order on both procedural and substantive grounds. His procedural attack is that the district court's order, constituting what is by now a preliminary injunction, should be vacated because it was entered without setting out the factual premises and legal conclusions on which it was based, as required by F.R. Civ.P. 52(a). Although the govern-

ment's opportunity to present its side before the order issued may have been cramped by the short notice, it had full opportunity on July 6th when the court heard the government's motion to vacate the order. The latter opportunity was but little removed from the usual hearing on issuance of a preliminary injunction. On the record, the court stated conclusions which were pertinent to injunctive relief, i. e. irreparable harm, countervailing harm to the defendant, and the probability of success. As to the factual premises underlying those conclusions, the record shows at the very least an awareness by the court and counsel of the relevant statutory provisions and administrative actions. Since the main purpose of Rule 52 is served in this instance, where the record fully explicates the district court's material assumptions of fact to the extent necessary for appellate review, and neither side has been misled as to the basic issues involved, we will accept, without encouraging the practice, what might otherwise constitute an insufficient statement of findings in a temporary restraining order which becomes, through lapse of time, a preliminary injunction.

Before granting a preliminary injunction the court must be satisfied, with good reason, that Maine would otherwise suffer irreparable loss, and that it was likely to prevail on the merits. The district court was also required to balance against the possibility of irreparable loss to the plaintiff, if preliminary relief was denied, any harm to defendant that might be caused by the grant of such relief. Whether there would be irreparable loss boiled down to the need, in fiscal 1973, for the Administrator to engage in a formal action called "allotment". Under the Act, allotment is the first step in a chain of actions required before federal financial aid is available to a particular state project. Maine asserts that if funds authorized to be appropriated in 1973 under § 207 of the Act were not timely allotted by the Administrator under § 205(a), they would cease

to be available for obligation during the ensuing fiscal year. *See* § 205(b)(1). If so, Maine's primary claim might become academic before it could ever be litigated.

■ The district court concluded that under the statute as drafted Maine's fears were well-grounded. We need not and do not decide that issue. It is enough that the statutory language renders the court's determination reasonable and well within its discretion. Section 205(b)(1) makes available for obligation in a subsequent year "[a]ny sums *allotted* to a State under subsection (a)" [Emphasis supplied.] There is obvious room for the inference that sums not allotted may not be so carried forward. The Administrator takes the position that funds authorized to be appropriated may be carried forward although never allotted in the relevant years. But without questioning his good faith in this particular, or indeed without foreclosing the possibility that on one theory or another unallotted funds might not irretrievably be lost to Maine, we do not see how either Maine or the district court prudently could have failed to take the positions they did. Maine was faced with a possible loss of millions if a timely allotment turned out to be mandatory. On the other hand, if the allotment turned out not to be mandatory, entry of an interim order would do no harm. The Administrator has been unable to persuade us that the order would injure his agency even were Maine to lose on the merits. The allotment ordered, with an express prohibition against obligating the funds until further order of court, does no more than preserve the possibility of effective final relief until the merits of Maine's claim are decided. If Maine loses, no valid claims against the United States can have been created.

■ As to Maine's probability of success on the merits, when the district court entered its order on July 6, 1973, it considered the rulings of several other district courts in favor of the position Maine was advocating. Today's head count on the Water Pollution Control Act Amendments of 1972, if that is the proper way to refer to the situation, is for courts awarding relief [1] and one declining [2] to do so. This demonstrates to us sufficient probability of success on the merits to support a preliminary injunction. Comment, Executive Impounding of Funds: The Judicial Response, 40 U.Chi.L.Rev. 328 (1973); Note, Impounding of Funds, 86 Harv.L.Rev. 1505(1973).

■ We do not intimate that the Administrator's position may not ultimately prevail. But the Administrator can prevail on appeal from a preliminary injunction only if he can show an abuse of discretion. Meccano, Ltd. v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822 (1920). The court did not abuse its discretion by concluding that Maine's prospects were sufficiently bright to justify issuance of an interim order which, at no appreciable cost to the federal government, might forestall irreparable loss to Maine.

Order affirmed.

---

1. City of New York v. Ruckelshaus, 358 F. Supp. 669 (D.D.C.1973); Campaign Clean Water, Inc. v. Ruckelshaus, 361 F.Supp. 689 (E.D.Va.1973); Minnesota v. EPA, 5 E.R.C. 1586 (D.Minn.1973); Martin-Trigona v. Ruckelshaus, 5 E.R.C. 1665 (N.D.Ill.1973).

*Cf.* Note, Protecting the Fisc: Executive Impoundment and Congressional Power, 82 Yale L.J. 1636, 1652 (1973).

2. Brown v. Ruckelshaus, 364 F.Supp. 258 (C.D.Cal.1973).