**TOWNSHIP OF RIVER VALE, Plaintiff,**

v.

**Patricia Roberts HARRIS et al., Defendants.**

**Civ. A. No. 76–1927.**

United States District Court,
District of Columbia.

Jan. 11, 1978.

Thomas E. Patton, Washington, D. C., and Marvin H. Gladstone, Hackensack, N. J., admitted pro hac vice, for plaintiff.

Maryann Clifford, Atty., U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM–ORDER

GASCH, District Judge.

Plaintiff, Township of River Vale, is a New Jersey municipal corporation. It has brought this action for a declaratory judgment and mandamus to compel defendants to administer the Grants for Basic Water and Sewer Facilities Program which was authorized by Congress under section 702 of the Housing and Urban Development Act of 1965. Presently before the Court are defendants' motion for judgment on the pleadings, or in the alternative for summary judgment, and plaintiff's motion for a preliminary injunction. Based on the reasoning hereafter set forth, the Court concludes that there is no genuine issue of material fact and that defendants are entitled to a judgment as a matter of law. Accordingly, defendants' motion will be granted; plaintiff's motion will be denied; and the case will be dismissed.

In 1965 Congress passed the Housing and Urban Development Act, section 702 of which authorized the Secretary of the Department of Housing and Urban Development to make grants to local public bodies to help finance the cost of projects for basic

public water and sewer facilities.[1] Pursuant to this authorization, Congress appropriated $500,000,000 in 1972, to remain available until expended.[2] In 1973 this amount remained largely unexpended, so Congress reaffirmed its desire to have these funds spent on the section 702 grants by reappropriating $400,000,000, also to remain available until expended.[3] The section 702 program was one of approximately ten "categorical" grant programs administered by HUD. Under the program, applications for grants were submitted directly to HUD, reviewed by it, and funded if approved.

On September 6, 1972, plaintiff submitted a preliminary section 702 application to the HUD Newark, New Jersey Area Office. HUD determined that it met minimum qualifications and therefore invited plaintiff to submit a full application. HUD noted, however, that the invitation was not a commitment of federal funds, and that a decision regarding possible funding would only be made after review of the full application. On December 13, 1972, plaintiff filed its full application for $1,196,212.

While plaintiff's application was being reviewed, HUD Secretary Romney ordered on January 8, 1973, that some of the categorical grant programs, including the section 702 program, be suspended. Accordingly, review of plaintiff's application likewise was suspended. A week later, Secretary Romney issued further instructions by telegram to the area offices requesting them to notify him of all applications that were deemed approved prior to January 5, 1973. Certain criteria were set forth in the telegram for guidance in making that determination. Mr. Richard Lehman of the Newark office applied those criteria to the applications before that office and concluded that two applications satisfied them. Plaintiff's application was not one of the two, and so it was not forwarded to the Secretary, but was returned to plaintiff. As a result of Secretary Romney's action, the Director of the Office of Management and Budget (OMB) on or about January 26, 1973, impounded approximately $400,000,000 that had been appropriated for these grants.

This impoundment of funds by the Executive branch caused considerable consternation in the Congress. Among other things, it caused Pennsylvania Congressman Rooney, along with five local governments in his district, to sue the Secretary of HUD and the Director of OMB in the district court here, seeking relief similar to that sought in the case sub judice—an order directing the defendants to release the funds and to accept and consider those plaintiffs' section 702 applications. *Rooney v. Lynn*, C.A. No. 2010–73 (D.D.C. filed Nov. 5, 1973). Judge Green granted plaintiffs therein their requested relief on July 30, 1974. That case was not a class action, but the court's decision ordered the Secretary of HUD to

> reactivate the Grants for the Basic Water and Sewer Facilities Program by accepting and processing *all* applications from local communities for such grants and by awarding grants to those applicants, who in his judgment, best meet the requirements of Section 702 of the Housing and Urban Development Act of 1965 (42 U.S.C. § 3102).

*Rooney v. Lynn*, C.A. No. 2010–73, at 18 (D.D.C. July 30, 1974).

Defendants in that case appealed and requested a stay pending appeal, which the circuit court denied. The parties then settled the case. Therefore, the circuit court dismissed the appeal as moot and remanded the case to the district court with directions to vacate its findings of fact and conclusions of law and to dismiss the complaint as moot. *Rooney v. Hills*, No. 74–1867 (D.C. Cir. Sept. 10, 1975). The district court complied with those directions. *Rooney v. Hills*, C.A. No. 2010–73 (D.D.C. Oct. 1, 1975).

---

1. Pub.L. No. 89–117, 79 Stat. 490, *codified at* 42 U.S.C. § 3102 (1970).

2. Act of Aug. 22, 1972, Pub.L. No. 92–399, 86 Stat. 606.

3. Act of Oct. 24, 1973, Pub.L. No. 93–135, 87 Stat. 483.

In the interim between the district court's entry of judgment for plaintiffs in *Rooney* and the vacation of that judgment and dismissal of the suit, new relevant legislation was passed by Congress, The Housing and Community Development Act of 1974.[4] It was Congress' intent through this Act to replace the categorical grants, including the section 702 program, with one single program providing comprehensive funding to meet all community needs, including water and sewer facilities.[5] This new program was called the "block grant" program, and under its funding scheme, local governments would apportion the funds in accordance with their own determination of need. Rather than approve each application, HUD would simply monitor the grantee's performance of its comprehensive development plan.

This 1974 Act provided that "[e]xcept with respect to projects and programs for which funds have been previously committed, no new grants or loans shall be made after January 1, 1975, under [section 702]." 42 U.S.C. § 5316(a) (Supp. V 1975). The Act further provided that funds appropriated for the section 702 grants could be used to liquidate the new block grant contracts. *Id.* § 5303(a)(1)(B). Finally, the Act authorized the Secretary of HUD to transfer the assets and liabilities of any program superseded by the Act to the HUD revolving fund for liquidating various other HUD programs. *Id.* § 5317. Pursuant to this authority, the balance of appropriations originally designated for section 702 grants was transferred to that revolving fund.

■ Plaintiff alleges that a number of actions taken by defendants during the above-described sequence of events were illegal and entitle it to relief. Principally among them are:

(1) Suspension of the section 702 program by Secretary Romney;

(2) Impoundment of the funds appropriated for section 702 grants;

(3) Failure to follow the Administrative Procedure Act in issuing the criteria used to determine which section 702 applications were fully approved at the time of the suspension;

(4) Failure to conclude that plaintiff's application met those criteria; and

(5) Failure to comply with the *Rooney* order during the 14-month period before it was vacated.

Defendants raise various defenses, including mootness, presence of a political question, Congressional ratification, and laches. Assuming the actions upon which plaintiff bases its claim were in fact illegal, the Court holds that, based on the undisputed facts of this case, the provisions of The Housing and Community Development Act of 1974 moot plaintiff's claim, precluding the Court from granting any relief.

The language of the 1974 Act is unequivocal. Unless the defendants made a commitment before January 1, 1975 to fund plaintiff's section 702 application, there can be no such commitment and funding now. Plaintiff acknowledges that no formal commitment was made to it, either verbally or in writing, but it argues that as a result of various circumstances or events, a commitment should be deemed to have been made.[6]

Plaintiff's first argument that there was a commitment to fund its application arises out of the manner in which the section 702 applications were processed. Plaintiff

---

**4.** Pub.L. No. 93–383, 88 Stat. 633, *codified at* 42 U.S.C. §§ 5301–5317 (Supp. V 1975).

**5.** *See* 42 U.S.C. § 5301(d) (Supp. V 1975); H.R. Rep.1279, 93d Cong., 2d Sess. 133 (1974), U.S. Code Cong. & Admin.News, p. 4449 (Conference Report).

**6.** There is an inconsistency at this point in plaintiff's argument. It contends that a commitment was made, yet its complaint asks the Court to order HUD "to expeditiously reactivate and consider the plaintiff's application

. . . on the basis of statutory standards governing evaluation of applications for grants for basic water and sewer facilities as authorized by Section 702 . . . ." At oral argument, this theme was continued when plaintiff's counsel stated that plaintiff was simply asking that its application be given fair consideration and then if it was denied funding on the merits, it would argue that. This acknowledgement that the application needed evaluation suggests that no commitment was ever made.

states that it was defendants' policy to eliminate ineligible applicants at the pre-application stage and that "virtually" all full applications were approved for funding. Therefore, plaintiff submits that the invitation to submit a full application constituted a "de facto" funding commitment. Funding "virtually" all applications, however, is not the same as actually funding them all. Thus, there remained a chance that plaintiff would not get a grant. Moreover, the invitation to submit an application was expressly qualified with the declaration that it *did not* constitute a commitment of funds for the project. Although plaintiff may have had a reasonable expectation that its application would be successful, it did not yet have a right to that federal grant through a commitment of funds.

Plaintiff next argues that a commitment should be deemed made because its application met the criteria contained in Secretary Romney's telegram, and but for the arbitrary decision of the officials at the Newark Area office, its application would have been forwarded to the Secretary for funding. The very nature of this argument, however, reflects that no commitment for funding was made. Rather, it is a description of allegedly illegal action that precluded a funding commitment for which plaintiff now wants relief.

In *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) (per curiam), the Supreme Court held that an action must be dismissed as moot if, after it is filed, the statutory basis for the cause is repealed. *Id.* at 414, 92 S.Ct. 574. Where, as here, the statutory basis for plaintiff's cause of action has expired before it initiated suit, then *a fortiori* the action is moot. The court of appeals for this circuit applied that principle recently in *National Ass'n of Regional Councils v. Costle*, 564 F.2d 583 (D.C. Cir.1977), a case that presented issues similar to those before this Court.

In *Costle* plaintiff challenged the Environmental Protection Agency's (EPA) interpretation of its funding authority under the Federal Water Pollution Control Act Amendments of 1972. Congress had authorized $150,000,000 in contract authority for fiscal years 1973 and 1974 to effectuate that act, but by the end of those periods, the EPA had obligated only $13,000,000. The EPA argued that the expiration of those fiscal years deprived it of any authority to obligated the balance of the funds. *Id.* at 585. The court of appeals reversed the district court, which had held that it had the power to revive the EPA's lapsed budget authority. In explaining its decision, the circuit court distinguished between those cases in which a court acquires jurisdiction before the budget authority lapses and those in which that authority has already expired at the time the case is initiated. *Id.* at 587–588. In holding that a court has no authority to revive the budget authority in the latter situation, the court stated:

> Equity empowers the courts to prevent the termination of budget authority which exists, but if it does not exist, either because it was never provided or because it has terminated, the Constitution prohibits the courts from creating it no matter how compelling the equities.
>
>     \*     \*     \*     \*     \*     \*
>
> . . . Thus, unless a court can rely on a statutory authorization, it simply lacks the power to order the obligation of public funds, regardless of how appropriate a remedy that order would be.

*Id.* at 589.

With respect to the section 702 program in the case at bar, Congress originally directed that the funds appropriated be available until expended. Thus, had nothing else occurred, this Court would have statutory authority to rely on in granting plaintiff its relief. Such are not the facts, however. When Congress passed the 1974 Act creating the block grant program, it declared that after January 1, 1975, no new grants could be awarded under the section 702 program unless a funding commitment already had been made. 42 U.S.C. § 5316(a) (Supp. V 1975). Thus, what previously had been an appropriation of indefinite duration became one with a limited life span. Because plaintiff initiated this suit after that

period had expired and because it can show no previous funding commitment, under the *Costle* holding this Court is without power to order HUD to use its appropriations to fund plaintiff's application for a grant under the section 702 program, "no matter how compelling the equities."

Plaintiff nevertheless argues that this Court has the power to grant its requested relief because its "rights should be deemed frozen as of the date of the illegal impoundment." The cases plaintiff cites for support, however, are distinguishable on the same basis as noted by the *Costle* court: they involve either unexpired funding authority or an exercise of jurisdiction by the court before that authority terminated.[7]

Plaintiff also contends that the district court's order in the *Rooney* case preserved its rights and can serve as a basis for granting it relief here. As previously noted, however, that case was never certified as a class action, and the judgment subsequently was vacated and the case dismissed as moot. Thus, it neither conferred any rights on plaintiff nor preserved any rights it may already have had.

Plaintiff finally argues that its rights have been preserved by two statutory provisions. The first provision states:

> [N]o amount shall be recorded as an obligation of the Government of the United States unless it is supported by documentary evidence of—
>
>    \*     \*     \*     \*     \*     \*
>
> (6) a liability which may result from pending litigation brought under authority of law  .  .  .

31 U.S.C. § 200(a)(6) (1970). Plaintiff submits that during the fourteen months between the entry of the *Rooney* judgment and its subsequent vacation, that judgment constituted documentary evidence of a government obligation and therefore the money appropriated for the section 702 program could not have been legally transferred to the HUD revolving fund. Assuming a vacated order can have that effect, this statute nevertheless does not support plaintiff's case. That provision applies only to cases in which there is no question as to the Government's liability and the litigation's only purpose is to determine the amount of that liability.[8] 35 Comp.Gen. 185, 187 (1955). In this case, as in *Rooney*, the issue is not the amount of any liability for no liability is definite. Rather, the issue is whether funds are to be made available so that liabilities subsequently can be incurred.

The second statute plaintiff cites provides:

> Any provision of law which requires unexpended funds to return to the general fund of the Treasury at the end of the fiscal year shall not be held to affect the status of any lawsuit or right of action involving the right to those funds.

31 U.S.C. § 665b (1970). This case, however, does not involve a provision of law directing that unexpired section 702 appropriations be returned to the general fund of the Treasury. Instead, the law provides that the money be transferred to the HUD revolving fund and further, that no funds be committed after January 1, 1975 to the section 702 program. Thus, this statute also fails to preserve plaintiff's cause of action.

Accepting all of plaintiff's factual allegations as true, the Court finds that plaintiff has failed to show any pre-January 1, 1975 commitment of funds to it by the defendants. The Court also finds that, because of the explicit prohibition in the 1974 Act, it

---

**7.** *See, e. g., National Ass'n of Neighborhood Health Centers, Inc. v. Mathews*, 179 U.S.App. D.C. 135, 152–53, 551 F.2d 321, 338–39 (1976); *Cooperative Servs., Inc. v. United States Dep't of HUD*, 410 F.Supp. 865, 871–72 (D.D.C.1976); *Pennsylvania v. Weinberger*, 367 F.Supp. 1378, 1382–87 (D.D.C.1973).

**8.** The cases plaintiff cites to support its argument do not discuss or even cite this statute.

Rather, they are straightforward impoundment cases in which the courts have ordered unexpired funds to be released for disbursement. *See Maine v. Fri*, 486 F.2d 713 (1st Cir. 1973); *Pennsylvania v. Weinberger*, 367 F.Supp. 1378 (D.D.C.1973); *National Council of Community Health Centers, Inc. v. Weinberger*, 361 F.Supp. 897 (D.D.C.1973).

has no authority to order defendants to reactivate the section 702 program and make new funding commitments thereunder. Therefore, as a matter of law, this case is moot, and the defendants are entitled to entry of judgment in their behalf. Accordingly, the Court need not address the other defenses raised by the defendants in their motion.

Having considered the respective motions of defendants and plaintiff, the oppositions thereto, the arguments of counsel, and the record herein, and for the reasons set forth above, it is by the Court this 11th day of January, 1978,

ORDERED that defendants' motion for judgment on the pleadings, or in the alternative for summary judgment, be, and hereby is, granted; and it is further

ORDERED that plaintiff's motion for a preliminary injunction be, and hereby is, denied; and it is further

ORDERED that this case be, and hereby is, dismissed.