STATE OF MISSOURI and Barrett Toan, Director, Missouri Department of Social Services, Plaintiffs

v.

Margaret M. HECKLER, Secretary of Health & Human Services, United States Department of Health and Human Services, Carolyne K. Davis, Administrator, Health Care Financing Administration, John Berry, Director, Bureau of Program Operations, Michael Maher, Director, Office of Reimbursement Policies, Bernard Patashnik, Acting Director, Division of Medical Services Reimbursement, Gene Hyde, Regional Administrator, Region VII, Health Care Financing Administration, Dean Mordy, Associate Regional Administrator for Program Operations, Health Care Financing Administration, William R. Blake, Associate Regional Administrator for Financial Operations, Health Care Financing Administration, Defendants.

No. 82–0085–CV–W–8.

United States District Court, W.D. Missouri, W.D.

Feb. 8, 1984.

Paul Robert Otto, Asst. Atty. Gen., Jefferson City, Mo., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen. Civ. Div. and Neil H. Koslowe, Sp. Litigation Counsel, Dept. of Justice, Washington, D.C., Robert G. Ulrich, U.S. Atty., Kansas City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

STEVENS, District Judge.

This case arises out of dispute between the State of Missouri and the Department of Health and Human Services (HHS) over federal reimbursement of state expenditures under Title XIX of the Social Security Act (42 U.S.C. § 1396 *et seq.*), commonly referred to as Medicaid. Plaintiffs seek a declaratory judgment and equitable relief requiring defendants to reimburse plaintiffs for expenditures made between July 1, 1972, and June 30, 1979, in the amount of $5,831,652.[1] The matter is now before the court on cross motions for summary judgment, the parties having agreed the material facts are undisputed. Following three rounds of briefing extending over six months, the case is now undoubtedly ripe for disposition. The issues raised are best addressed by placing the pertinent factual and legal developments in their historical context.

On June 17, 1980, a two-year time limit on the filing of state claims for reimbursement under various social security programs, including Medicaid, became law as part of the Adoption Assistance and Child Welfare Act of 1980, Pub.L. No. 96-272, § 306, 94 Stat. 500, 530-31 (1980) (codified at 42 U.S.C. § 1320b-2 & note (Supp. IV 1980)) (hereinafter generally referred to as section 306). *See also State of Connecticut v. Schweiker,* 684 F.2d 979, 983 (D.C. Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). The general two-year limit applied only to claims for expenditures incurred on or after October 1, 1979. The treatment of expenditures prior to October 1, 1979, depends on whether a claim for reimbursement was on file on June 17, 1980, the date section 306 became law. If so, there is no deadline for reimbursement; if not, the law required that all such claims be filed before January 1, 1981, a date which the Secretary later extended to May 15, 1981. *See State of Connecticut,* 684 F.2d at 983-84.

Pursuant to this last provision, Missouri filed the claims here at issue on February 6, 1981, and May 11, 1981. HHS then refused to pay the claims as untimely under 1981 appropriations resolutions, which HHS interpreted as imposing a one-year time limit on the filing of claims for reimbursement. On September 15, 1981, several states whose claims had likewise been denied filed suit in the District Court for the District of Columbia for declaratory and injunctive relief. Missouri was not a party to that action.[2] On September 30, 1981, the last day of the 1981 fiscal year, the district court dismissed the case for failure to state a claim upon which relief could be granted; however, that decision was reversed on July 27, 1982. *State of Connecticut v. Schweiker,* 684 F.2d 979 (D.C.Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). The court of appeals rejected the Secretary's reliance on the shorter time limit contained in appropriations resolutions enacted after section 306 since those resolutions did not expressly override section 306. It found instead that the claims of the plaintiff states were timely under section 306 and

---

1. The original amount in dispute was $7,394,-349; however, $1,562,697 of that amount was subsequently paid, as reflected in the Amended Answer filed May 27, 1983.

2. Missouri later moved to intervene in the case following remand from the court of appeals, but its motion was denied on March 21, 1983.

payable out of any funds remaining from fiscal year 1981 since suit had been filed before those funds reverted to the Treasury at the close of the fiscal year.

While *State of Connecticut* was pending on appeal, Missouri filed this action on February 8, 1982. During the same period, Congress enacted continuing appropriations resolutions for fiscal year 1982 which expressly overrode section 306 and contained a one-year deadline for the filing of claims. *State of Connecticut*, 684 F.2d at 995 n. 28.

The last significant event for purposes of the present controversy occurred on October 2, 1982, with the approval of a joint resolution continuing appropriations for fiscal year 1983 (Pub.L. No. 97–276, 96 Stat. 1186 (1982)). Section 136 of the joint resolution provides as follows:

> Notwithstanding the decision of the United States Court of Appeals for the District of Columbia Circuit in Connecticut against Schweiker (No. 81–2090, July 27, 1982), section 306 of Public Law 96–272, or section 1132 of the Social Security Act, no payment shall be made, in or with respect to any fiscal year prior to fiscal year 1984, under this or any other Act, and no court shall award or enforce any payment (whether or not pursuant to such decision) from amounts appropriated by this or any other Act, to reimburse State or local expenditures made prior to October 1, 1978, under title I, IV, X, XIV, XVI, XIX, or XX of the Social Security Act, unless a request for reimbursement had been officially transmitted to the Federal Government by the State within one year after the fiscal year in which the expenditure occurred. After fiscal year 1983, any payment made to reimburse such State or local expenditures required to be reimbursed by a court decision in any case filed prior to September 30, 1982 shall be made in accordance with a schedule, to be established under the Social Security Act, over fiscal years 1984 through 1986.

96 Stat. 1197–98.

Against this background, the positions of the parties can be summarized as follows:

Missouri seeks a declaratory judgment that its claims are payable in fiscal year 1984 and thereafter, either out of fiscal year 1983 funds or fiscal year 1981 funds. *Plaintiffs' Supplemental Memorandum* at 4 (filed July 7, 1983). On the other hand, defendants' position is that the 1982 appropriation laws and the first sentence of section 136 prohibit payment to Missouri from 1982, 1983, or current funds; moreover, defendants contend that 1981 funds are unavailable because they lapsed before Missouri filed this lawsuit. *Reply to Plaintiffs' Brief on Summary Judgment Motions* at 1 (filed May 26, 1983). Defendants describe this situation as an account due but not payable, for want of spending authority. *Response to Plaintiffs' Supplemental Memorandum* at 3 (filed August 5, 1983).

In analyzing the arguments presented, it is helpful to start with the following undisputed proposition: Missouri's claims for Medicaid reimbursement here at issue were timely filed under the law and regulations then in effect since they were filed prior to May 15, 1981. This proposition follows inevitably from the holding in *State of Connecticut*. Thus it merely restates the obvious for this court to declare that the Secretary's refusal to pay the claims during fiscal year 1981 was contrary to section 306. This declaration does not end the matter, however, since it remains to be determined what, if any, appropriated funds are presently available to pay Missouri's claims. This issue was easily resolved in *State of Connecticut* since that action began during fiscal year 1981; therefore, current appropriations became subject to the equitable jurisdiction of the court and so remained available to pay the states' claims despite the close of the fiscal year, when unobligated funds otherwise revert to the Treasury by operation of law. 31 U.S.C. § 1552(a)(2).

It is the opinion of this court that the second sentence of section 136, and its legislative history, leave no doubt that Missouri's claims are payable in fiscal years 1984 through 1986:

After fiscal year 1983, any payment made to reimburse such State or local expenditures required to be reimbursed by a court decision in any case filed prior to September 30, 1982 shall be made in accordance with a schedule, to be established under the Social Security Act, over fiscal years 1984 through 1986.

96 Stat. 1198. This case was filed prior to September 30, 1982, and as stated above, it could not be any clearer that the Secretary acted unlawfully in refusing to pay the claims during fiscal year 1981.

In their brief filed May 11, 1983, plaintiffs quote extensively from the legislative history of section 136. It is unnecessary to analyze in minute detail the statements by various members of Congress since their import is abundantly clear: claims which a court finds were timely and otherwise qualified when filed should be paid. While taking this position, the legislators also emphasized they did not intend to prejudice pending cases. As they considered section 136, it was unclear whether the decision by the court of appeals in *State of Connecticut* would stand; it was not until February 22, 1983, that the Supreme Court denied the petition for writ of certiorari. 103 S.Ct. at 1197–98.

In the face of clear legislative intent, defendants argue that the first sentence of section 136, and not the second, applies to this case and prohibits payment to Missouri.[3] According to defendants, the second sentence of section 136 applies only if a court finds the claims "were timely filed under existing laws *and* may be paid from funds currently available for such payment." *Reply to Plaintiffs' Brief on Summary Judgment Motions* at 3 (filed May 26, 1983) (emphasis added). As for the first part of defendants' test, this court has already declared that Missouri's claims were timely filed under the law then in effect; however, by "existing laws" defendants mean the law in effect when suit was filed, and under the 1982 appropriations law in effect when this suit began, Missouri's claims were not timely. This is an astonishingly arrogant assertion since it means that a state which timely filed its claims can have no expectation that the Secretary will obey existing law and pay claims as authorized by Congress. In other words, defendants assert that HHS can stall and disobey the 1981 law and then take refuge in a 1982 law more hospitable to its position. This contention is untenable.

The second requirement defendants would impose upon the application of the second sentence of section 136 is that the claim may be paid from funds currently available for such payment, such as in the *State of Connecticut* case, where 1981 funds remain available under the power of equity. This assertion is faulty for at least two reasons. First, although defendants cite *State of Connecticut* as an example of the applicability of the second sentence of section 136, under their interpretation it is in fact the *only* case to which it could conceivably apply. This unduly narrow interpretation of the second sentence entirely ignores the September 30, 19*82* deadline for filing suit contained therein. If Congress had intended the second sentence of section 136 to apply only to *State of Connecticut*, it could have simply said so, or at least it could have imposed a much earlier deadline for the filing of suit, *e.g.*, September 30, 19*81*. A second difficulty with defendants' interpretation requiring that funds be available from some other source besides section 136 is that it renders the second sentence superfluous. If funds are otherwise available, then there is no need for the further authorization of funds in section 136. For instance, in *State of Connecticut* it is unnecessary to provide for payment of claims in 1984 to 1986 since 1981 funds were held available in equity.

---

**3.** To apply the first sentence of section 136 to this case would raise serious constitutional questions, as argued by plaintiffs. In response, defendants suggest there is no constitutional problem since section 136 is always subject to repeal. If that specious argument were accepted, no law would ever be declared unconstitutional since any law is subject to repeal. Since the court holds the second sentence of section 136 excepts this case from the operation of the first sentence, further discussion of any constitutional question is unnecessary.

Indeed, defendants' argument also contains the troublesome implication that Congress can override the court's equitable jurisdiction and tamper with the rights of the parties in a pending lawsuit, a proposition for which defendants offer no authority. In short, the court rejects defendants' arguments and finds that the second sentence of section 136 of Pub.L. No. 97–276 authorizes payment of the disputed claims in this case during fiscal years 1984 through 1986.

As an alternative basis for this decision, the court finds that funds appropriated during fiscal year 1981 and not otherwise obligated remain available for payment of Missouri's claims under authority of 31 U.S.C. § 1502(b):

> A provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance.

In arguing to the contrary, defendants rely on *State of Connecticut:*

> Under the controlling case law, the critical question is whether the budget authority has already lapsed before suit has been filed. As the court in *National Association of Regional Councils* stated, "If ... budget authority has lapsed before suit is brought, there is no underlying congressional authorization for the court to preserve."

684 F.2d at 997. However, the court in *State of Connecticut* considered 31 U.S.C. § 665b, the predecessor of 31 U.S.C. § 1502(b), only in passing by way of a footnote. 684 F.2d at 996 n. 29. Obviously the court there did not need to decide the applicability of a statutory antilapse provision, since common law doctrines of equity were sufficient to prevent lapse on the facts presented. Moreover, *National Association of Regional Councils v. Costle,*

564 F.2d 583 (D.C.Cir.1977), cited in *State of Connecticut* and also relied on by defendants, apparently involved a situation where the plaintiffs "had not even applied for funds during the statutory term of that lapsed authority." *Id.* at 589. Here in sharp contrast, Missouri applied for available funds in a timely fashion, but HHS refused to abide by the terms of the entitlement program as it then existed. *See* 42 U.S.C. § 1320b–2(a)(2) (enacted as part of § 306 of Pub.L. No. 96–272) (noting that the federal funds here at issue are provided to states "on an entitlement basis").

The court finds that Missouri's right to reimbursement arose when it filed its claims in a timely fashion on February 6, 1981, and May 11, 1981, and otherwise complied with the law and regulations then in effect. With this right to reimbursement came the concomitant right of action to enforce the claim for reimbursement. Pursuant to 31 U.S.C. § 1502(b), the subsequent reversion of unobligated fiscal year 1981 funds to the Treasury did "not affect the status of ... rights of action involving the right to an amount payable from the balance."[4] Therefore, it is the alternative holding of this court that Missouri's claims are payable from, and to the extent of, any unobligated balance of 1981 funds.

For the reasons stated, it is

ORDERED that plaintiffs' Motion for Summary Judgment is granted. It is further

ORDERED that judgment is hereby entered declaring that the claims for reimbursement under Title XIX of the Social Security Act (Medicaid) filed by the State of Missouri on February 6, 1981, and May 11, 1981, in the amount of $5,831,652 were timely filed under section 306(b)(3) & (4) of Pub.L. 96–272, 94 Stat. 500, 530–31 (1980). It is further

---

**4.** With the disingenuous sophistry characteristic of their many briefs, defendants suggest that although 31 U.S.C. § 1502(b) preserves the "status" of a right of action, it does not preserve the availability of funds to pay the claim. In other words, according to defendants the abstract right to recover continues unaffected, but the actual ability to recover ceases at the end of the fiscal year. It certainly seems to this court that if the ability to recover on a right of action is delayed, impaired, or destroyed, the "status" of that right has been fundamentally altered.

ORDERED that defendants shall pay such claims pursuant to section 136 of Pub.L. No. 97–276, 96 Stat. 1186, 1197–98 (1982); in the alternative, defendants shall pay such claims out of fiscal year 1981 funds pursuant to 31 U.S.C. § 1502(b). It is further

ORDERED that defendants' Motion for Summary Judgment is denied. It is further

ORDERED that costs will be taxed to defendants.

