**SOUTH CAROLINA HEALTH AND HUMAN SERVICES FINANCE COMMISSION; South Carolina Department of Mental Health, Plaintiffs–Appellants,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.**

No. 89–1782.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1990.

Decided Oct. 2, 1990.

M. Elizabeth Crum, McNair Law Firm, P.A., argued (Charles Porter, McNair Law Firm, P.A., Richard G. Jepfer, Asst. Gen. Counsel, South Carolina Health and Human Services Finance Com'n, Columbia, S.C., Kennerly M. McLendon, General Counsel, South Carolina Dept. of Mental Health, Columbia, S.C., on brief), for plaintiffs-appellants.

F. Richard Waitsman, Asst. Regional Counsel, Dept. of Health and Human Services, Atlanta, Ga., argued (Bruce R. Granger, Chief Counsel, Region IV, Dept. of Health and Human Services, Atlanta, Ga., E. Bart Daniel, U.S. Atty., Glen E. Craig, Asst. U.S. Atty., Columbia, S.C., on brief), for defendant-appellee.

Before RUSSELL and HALL, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.

BULLOCK, District Judge:

The South Carolina Health and Human Services Finance Commission ("Finance Commission") and the South Carolina Department of Mental Health ("DMH") appeal a ruling by the district court upholding the disallowance by the Departmental Grant Appeals Board of the United States Department of Health and Human Services ("DGAB") of $1,043,092 in federal Medicaid funding claimed by the Finance Commission pursuant to Title XIX of the Social Security Act. We affirm.

I.

Crafts Farrow Hospital is an inpatient mental health facility for elderly patients administered by the DMH. The DMH received periodic payments from Medicaid based on a retrospective rate system. In this system, an interim billing rate serves as a proxy for the actual cost of providing patient services and is estimated from the provider's, in this case Crafts Farrow, historical costs. Adjustments in payments are made up or down to reflect the difference between those estimated interim payments and the actual cost of delivering patient services during the cost-year period. Prior to 1987, the DMH never claimed any reimbursement from Medicaid for the cost of ancillary services, that is, nonpsy-

chiatric services such as laboratory, radiology, physical therapy, clinic costs, and EEG and EKG services, provided to patients at Crafts Farrow. As a result, the DMH was never reimbursed by Medicaid for those ancillary services.

In 1986, the DMH hired a consulting firm which performed a review of its reimbursement practices. One of the firm's recommendations was that the DMH request Medicaid reimbursement for its ancillary services. Based on this recommendation, the Finance Commission reopened the DMH's cost reports for Crafts Farrow for the five-year period ending June 30, 1984, and reimbursed the DMH by interdepartmental transfer for the costs of providing ancillary service at Crafts Farrow. The Finance Commission then claimed these ancillary service costs amounting to $1,043,092 as an increasing prior period adjustment in its Quarterly Statement of Medicaid Expenditures for the quarter ending March 30, 1987.

On September 10, 1987, the Health Care Financing Administration ("HCFA"), a branch of the United States Department of Health and Human Services, disallowed the increasing prior period adjustment in Medicaid costs claimed by the Finance Commission. The HCFA disallowed this claim because it was not filed within two years pursuant to 42 U.S.C. § 1320b–2(a) and 45 C.F.R. § 95.1 (1989). The DGAB by written opinion upheld the disallowance. Pursuant to 28 U.S.C. § 1331, the Finance Commission and the DMH appealed to federal district court. The district court upheld the disallowance. The Finance Commission and the DMH now appeal to this court. They contend that their claim for

Medicaid reimbursement falls within an exception to the two-year filing requirement.[1]

## II.

This court's review of the DGAB's decision is limited. Pursuant to 5 U.S.C. § 706(2)(A), this decision must be upheld unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *E.I. DuPont de Nemours & Co. v. Train*, 541 F.2d 1018, 1026 (4th Cir.1976), *rev'd in part on other grounds*, 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977). The court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). If the agency's construction of the applicable statute is sufficiently reasonable it should be accepted by the reviewing court. *Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731 (1975). The focal point for this review is the administrative record, not a new record made initially in the reviewing court. *Camp*, 411 U.S. at 142, 93 S.Ct. at 1244.

## III.

The Finance Commission and the DMH contend that the Finance Commission should have been reimbursed by Medicaid for the costs of the ancillary service at Crafts Farrow. Because the expenditures that the Finance Commission first sought reimbursement for in 1987 were made in fiscal years 1979 through 1984, the two-year filing requirement of 42 U.S.C. § 1320b–2(a) was not met.[2] The Finance

1. The Finance Commission and the DMH also contend that the district court erred by not taking judicial notice of the fact that the DMH never received the full amount of state funds that it requested from the South Carolina General Assembly. Even assuming for the sake of argument that (1) this fact is relevant, and (2) the district court should have taken judicial notice of it, not taking judicial notice of this fact was harmless error.

2. Title 42 U.S.C. § 1320b–2(a) provides that:

[A]ny claim by a State for payment with respect to an expenditure made during any calendar quarter by the State—(1) in carrying out a State plan approved under subchapter ... XIX ... of this chapter ... shall be filed ... within the two-year period which begins on the first day of the calendar quarter immediately following such calendar quarter; and payment shall not be made under this chapter on account of any such expenditure if claim therefor is not made within such two-year period; except that this subsection shall not be applied so as to deny payment with respect

Commission and the DMH argue that the reimbursement request for the costs of providing ancillary service at Crafts Farrow is simply an adjustment to prior year costs and, thus, payment is not barred by the two-year limitations period. An adjustment to prior year costs is "an adjustment in the amount of a particular cost item that was previously claimed under an interim rate concept and for which it is later determined that the cost is greater or less than that originally claimed." 45 C.F.R. § 95.4 (1989). "Cost item" as used in this definition refers to the per diem rate and not the individual costs of particular services and the DGAB has in the past permitted state agencies to obtain reimbursement for particular cost items not included in the calculation of the interim billing rate. *See Pennsylvania Dep't of Pub. Welfare,* DGAB Decision No. 703, slip op. at 2–4 (Nov. 19, 1985); *Ohio Dep't of Pub. Welfare,* DGAB Decision No. 622, slip op. at 7 n. 3 (Feb. 7, 1985). The Finance Commission and the DMH argue that the facts in this case are indistinguishable from the facts in *Pennsylvania* and *Ohio,* and therefore contend that the DGAB's decision to disallow the Finance Commission's reimbursement request was arbitrary and capricious.

We believe that the DGAB's decision was neither arbitrary nor capricious and will uphold the disallowance. To qualify as an adjustment to prior year costs, an adjustment must be "related to the interim rate process." *Tennessee Dep't of Health and Env't,* DGAB Decision No. 921, slip op. at 5 (Dec. 2, 1987). Since a retrospective rate system uses historical cost as a proxy for the actual cost of providing services, the interim billing rate most likely will not be for the exact amount of the actual current costs. As a result, a retrospective rate system permits state agencies to file adjustments for costs which were unknown to the agency earlier and therefore not included in the provider's historical cost estimate.

This is the type of adjustment which the DGAB considers as an adjustment to prior year costs, and is related to the interim rate process because in such a process unknown costs are bound to arise for which state agencies should be compensated.

The DGAB ruled that the adjustments claimed in *Pennsylvania* and *Ohio* were clearly related to the interim rate process. *See Pennsylvania,* slip op. at 3–4; *Ohio,* slip op. at 6–7. In both cases, state agencies filed an adjustment for costs which they were not aware of when they had filed their interim claims. This fact distinguishes *Pennsylvania* and *Ohio* from this case. The DMH knew at the time it calculated its interim billing rate what the ancillary services provided to patients at Crafts Farrow cost.[3] The DMH did not make an interim cost estimate which excluded unknown ancillary services. Any exclusion the DMH made was not related to a retrospective rate system because the costs of ancillary service were known to the DMH all along and could have been included in its interim cost report. Therefore, the DGAB properly disallowed the Finance Commission's reimbursement request.

As the district court correctly noted, if a contrary position were adopted, the exception of adjustments to prior year costs would swallow up the two-year limitations rule of 42 U.S.C. § 1320b–2(a). The main purpose of this time limit is to ensure that states finalize their Medicaid reimbursement requests in a timely fashion. *See New York State Dep't of Social Servs.,* DGAB Decision No. 521, slip op. at 8 (Mar. 6, 1984). Delayed claims make it difficult for the Department of Health and Human Services to plan its budget since "claims for millions of dollars for expenditures in years long gone by could turn up at any time." *Id.; see also Connecticut v. Schweiker,* 684 F.2d 979, 982 (D.C.Cir. 1982), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983) ("The absence

---

to any expenditure involving court-ordered retroactive payments or audit exceptions, or adjustments to prior year costs.

**3.** Although the DMH listed the ancillary service costs as "zero" or made the statement "no ancil-

lary costs" on the interim billing forms it submitted to Medicaid, those forms' supporting schedules consistently itemized the exact amount of ancillary service costs.

of any time limits apparently made it more difficult for HHS to plan and administer the budget for the various Social Security Act programs."). The exceptions to the two-year limitations period in 42 U.S.C. § 1320b–2(a) provide for some administrative inconvenience. In cases like *Pennsylvania* and *Ohio*, state agencies will be reimbursed if they were unaware of particular costs at the time they filed their interim reimbursement claims. However, it is neither arbitrary nor capricious for the DGAB to disallow the Finance Commission's reimbursement request because the DMH knew the precise amount of the ancillary service costs at Crafts Farrow all along and could have claimed these costs in its interim cost reports.

AFFIRMED.